UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ANTHONY D. WALDEN,            )
                             )
    *Plaintiff*,            )
                             )
v.                           )            No. 1:19-cv-00288-SKL
                             )
COMMISSIONER OF SOCIAL SECURITY,   )
                             )
    *Defendant*.            )

## MEMORANDUM AND ORDER

Anthony Walden brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Anthony Walden died on June 14, 2020. On January 4, 2021, Edmon Walden, on behalf of Anthony Walden's estate ("Plaintiff"), was substituted as the plaintiff in this case [Doc. 32].[1]

Each party has moved for judgment [Doc. 22 & Doc. 24] and filed supporting briefs [Doc. 23 & Doc. 25]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 22] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 24] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 11 ("Tr.")], Plaintiff filed his application for DIB on September 28, 2016, alleging disability beginning July 14, 2012. Plaintiff's claims were

---

[1] The parties have not disputed that Plaintiff can prosecute this action and seek recovery for any "underpayments" that Anthony Walden would have been entitled to recover. *See* 20 C.F.R. § 404.503. Further, although "Plaintiff" is the estate, the Court will also use "Plaintiff" to refer to Anthony Walden, i.e., "the ALJ found Plaintiff had the following severe conditions . . . ."

denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on August 16, 2018, in Knoxville, Tennessee. On November 15, 2018, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time from the alleged onset date through the date Plaintiff was last insured for DIB purposes, December 31, 2015.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born January 20, 1977 (Tr. 20), making him a younger individual on the date last insured. 20 C.F.R. § 404.1563. He has at least a high school education and is able to communicate in English. (Tr. 20). He has past relevant work as an auto parts store manager and an automobile mechanic (Tr. 20).

### B.    Medical Records

In his Disability Report, Plaintiff alleged disability due to stroke, atrial fibrillation ("AFib"), diabetes, seizures, and a "car wreck causing head/neck injury/hip replacement" (Tr. 264). While there is no need to summarize the extensive medical records herein, the records have been reviewed and will be addressed herein as necessary.

### C.    Hearing Testimony

At the hearing before the ALJ on August 16, 2018, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 89-110).

2

## III.  ELIGIBILITY AND THE ALJ'S FINDINGS

### A.  Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B.    The ALJ's Findings

As mentioned, Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015 (Tr. 13). Accordingly, Plaintiff must show he became disabled before this date. Because his alleged onset date is July 14, 2012,[2] the relevant time period for determining his entitlement to benefits is July 14, 2012, through December 31, 2015.

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity between the alleged onset date of July 14, 2012, and his date last insured (Tr. 14). At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical, thoracic, and lumbar spine, status post-right hip surgery; (2) fracture residuals; (3) AFib; (4) diabetes mellitus; and (5) obesity (Tr. 14). The ALJ found Plaintiff also had several non-severe impairments, including sleep apnea, seizure episodes, and anxiety (Tr. 14). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16).

---

[2] Plaintiff was previously found not disabled for the time period between August 23, 2010, to July 13, 2012 (Tr. 136-147).

Next, the ALJ found that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional restrictions:

- He requires a sit/stand option or postural adjustment at the workstation at about 30 minute to one-hour intervals.

- He can occasionally climb ladders, ropes, scaffolds, ramps, and stairs.

- He can perform occasional postural maneuvers (balancing, stooping, kneeling, crouching, and crawling).

- He must avoid all exposure to industrial hazards (unprotected heights, moving machinery, etc.).

(Tr. 16). At step four, the ALJ found Plaintiff was unable to perform his past relevant work (Tr. 20). At step five, however, the ALJ found that, during the relevant period, Plaintiff was capable of performing other types of work with jobs existing in substantial numbers in the national economy, including as an inspector-checker, hand mounter, and laminator (Tr. 21).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date and the date last insured (Tr. 21).

## IV.    ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, or in the alternative, for further administrative proceedings. As the Court interprets his brief, Plaintiff asserts the ALJ erred at step three by finding Plaintiff did not have a listing-level impairment, and in his determination of Plaintiff's RFC. Plaintiff also possibly asserts error at step two. Plaintiff makes the following arguments:

5

- The ALJ "failed to consider the following conditions: Plaintiff's depression (R. 898), the medication prescribed for Plaintiff's depression (R. 898), thoracic wedge deformities (R. 899), and hypercholesterolemia (R. 905)." [Doc. 23 at Page ID # 1387-88]. (This seems to be the step two argument.)

- At step three, the ALJ failed to consider Plaintiff's depression, the side effects of his medications, the severity of his back and hip pain, and the severity of his diabetes which causes AFib and affects his ability to drive. Plaintiff contends that the "analysis set forth in Part Three of the evaluation process contained no consideration of the claimant's physical impairments which the administrative court found to be severe, in reaching the ALJ's conclusions of law." [*Id.* at Page ID # 1389].

- "The record contains no findings related to how the claimant's non-severe conditions and medications affect his ability to maintain gainful employment, nor does the lower court analyze how the non-severe conditions affect the claimant's [RFC]." [*Id.* at Page ID # 1391].

- "[T]he record is consistent with a finding that Claimant's condition is degenerative in nature, and that the ALJ failed to consider the more recent analysis of the Claimant's lifting and ambulatory abilities in the court's conclusions regarding the Claimant's RFC." [*Id.* at Page ID # 1392].

Notably, while Plaintiff cites a few cases for boilerplate law, he does not cite to caselaw applicable to the particulars of this case.

6

## A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted).  The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833.  Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

7

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B. STEP TWO**

As noted, Plaintiff appears to assert error at step two of the sequential process by arguing the ALJ failed to properly consider his alleged depression, the side effects of his depression medication, his thoracic wedge compression deformities, and his hypercholesterolemia [*see* Doc. 23 at Page ID # 1388].

**a. Depression**

Regarding his alleged depression, Plaintiff cites to one note in the record, from February 23, 2015, indicating that he "has been on Zoloft for about 4 months, this has helped his depression." (Tr. 898). The Commissioner points out Plaintiff's depression is referenced again in a treatment note from September 17, 2015, which simply indicates his medication would be refilled (Tr. 905). In his October 2016 Adult Disability Report, Plaintiff was asked to list "all of the physical or

8

mental conditions (including emotional or learning problems) that limit your ability to work." (Tr. 264). He did not list depression. At the August 2018 hearing, the ALJ asked Plaintiff's representative: "2012 to 2015 I believe you're arguing for musculoskeletal limitations." (Tr. 102). The representative responded, "Yes sir." (Tr. 102).

In April 2012, Plaintiff went to Memorial Health Care System. The treatment record states: "He is very stressed, trying to get disability, just doesn't feel like himself since the car wreck [in 2006], bills are piling up, depressed, denies suicide." (Tr. 814). The same note indicates Plaintiff refused "pharm mgmt" for his alleged depression (Tr. 814).

The ALJ noted that Plaintiff did not seek any specific mental health treatment (Tr. 14). More importantly, the ALJ further noted that several treatment records from Siskin Spine and Rehab and from CHI Memorial Hixson reflected normal psychiatric findings (Tr. 14). The Siskin Spine treatment records include the one depression-related treatment note that Plaintiff relies on. In November 2016, the state agency psychological consultant who reviewed Plaintiff's file, Victor O'Bryan, Ph.D., wrote that Plaintiff "report[ed] depression and anxiety" in 2012, but that Plaintiff declined antidepressants (presumably referencing the Memorial Health record cited above) (Tr. 159). Dr. O'Bryan also notes Plaintiff was taking Zoloft for depression in February 2015, but he observes that the record does not contain a diagnosis for depression, only reports of depression from Plaintiff (Tr. 159). Dr. O'Bryan ultimately did not list depression as one of Plaintiff's impairments. He did, however, list anxiety (Tr. 159). In January 2017, Jenaan Khaleeli, Psy.D., made the same findings (Tr. 176). The ALJ found their opinions "well supported by the record," and gave them "great weight." (Tr. 14).

9

Plaintiff has the burden of establishing the existence of a medically determinable impairment at step two.  20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1512(a)(1); *see also Ealy*, 594 F.3d at 512-13.  Under 20 C.F.R. § 404.1521, to be considered "medically determinable," an impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  The regulation further states that, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  *Id.*  An impairment must also meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  "Lastly, '[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.'"  *See Huffstetler v. Saul*, No. 3:18-CV-210-DCP, 2019 WL 4752270, at *4 (E.D. Tenn. Sept. 30, 2019) (quoting *Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017)).

The record concerning Plaintiff's depression is detailed above.  At best, it reflects that, at some point, Plaintiff began complaining of depression, and he was eventually given medication to treat it for a period of time.  This is not sufficient to show that Plaintiff's alleged depression is a medically determinable impairment.  As such, Plaintiff has not shown the ALJ erred by not classifying it as a severe impairment at step two, or by not considering it at the later steps of the analysis, including in assessing RFC.  *See Rouse v. Comm'r of Soc. Sec.*, No. 2:16-cv-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) ("On the other hand, a claimed condition which is not 'medically determinable' need not be considered at all. As stated in 20 C.F.R. § 404.1527(a),

10

an ALJ is only required to consider impairments which "result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.").  To the extent Plaintiff is arguing that the side effects from his depression medication created a separate "impairment," that argument is foreclosed for the same reasons, and it need not be separately addressed.  The Court further notes that in December 2015, Plaintiff reported that he had no "Medication Symptoms" (Tr. 942).

### b.    Thoracic Wedge Compression Deformities

Regarding the ALJ's treatment of Plaintiff's thoracic wedge compression deformities at step two, the Commissioner argues:

> At best, this is an argument of semantics, and does not require remand. In his brief, Plaintiff referenced the February 2015 appointment at Siskin Spine and Rehab. At that appointment, the doctor reviewed the MRI scan of Plaintiff's thoracic spine from August 2014, and made a note that the scan showed "thoracic wedge compression deformities." The ALJ discussed this very same evidence in his decision, noting that imaging of the thoracic spine from August 2014 "revealed chronic anterior wedge compression deformities but no stenosis, herniation, or nerve root involvement." The ALJ found "degenerative disc disease of the thoracic spine" to be a severe impairment, and explicitly linked the MRI scan findings of Plaintiff's thoracic spine to the limitations in the RFC. That analysis was sufficient.

[Doc. 25 at Page ID # 1407 (citations to Tr. omitted)].  Plaintiff failed to respond, and the Court finds the Commissioner's arguments persuasive. *See Huffstetler*, 2019 WL 4752270, at *4 ("'[C]ourts in this district have recognized generic or broad terminology to encompass more specific diagnoses' when reviewing an ALJ's consideration of severe impairments." (quoting *Cartwright v. Saul*, No. 3:18-CV-244-HBG, 2019 WL 4248894, at *4 (E.D. Tenn. Sept. 6, 2019))).

11

Accordingly, the Court finds no error in the ALJ's failure to specifically list Plaintiff's thoracic wedge compression deformities as a separate severe impairment at step two.

### c.  High Cholesterol

Plaintiff presents no argument as to how his high cholesterol "impacts [his] ability to work in any way." *Richards v. Comm'r of Soc. Sec.*, No. 16-10905, 2017 WL 892345, at *4 (E.D. Mich. Feb. 16, 2017) (rejecting step two argument about high cholesterol where claimant failed to present an argument "regarding how her high cholesterol constitutes a severe impairment," and failed to address how it affected her ability to work).  The one record Plaintiff cites simply indicates that he was diagnosed with the condition following a lipid panel, and he was prescribed medication to manage it.  Accordingly, the Court finds the ALJ did not err in failing to find that Plaintiff's high cholesterol constitutes a severe impairment; nor did the ALJ err in failing to incorporate any limitations in the RFC specifically related to Plaintiff's high cholesterol.  "Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019).

### C.  Step Three

Plaintiff also appears to challenge the ALJ's determination at step three that Plaintiff's impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1:

> At Step-Three of the evaluation process, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments as set forth in 20 CFR Part 404, Subpart P, Appendix 1.  In making this finding, the ALJ found that the claimant's mental impairment (anxiety – and the administrative court failed to consider Plaintiff's depression) cause[d] no restrictions to Claimant's day to day activities and functioning capabilities.  The administrative court did not account for any side effects of the many medications prescribed to Plaintiff . . . , the severity of Plaintiff's diabetes

12

mellitus and how it affects his ability to drive, the severity of Plaintiff's chronic back pain, the severity of Plaintiff's hip pain after his hip replacement, the impact the hip surgery had on Plaintiff's back pain, and the atrial fibrillation caused by his diabetes. The analysis set forth in Part Three of the evaluation process contained no consideration of the claimant's physical impairments which the administrative court found to be severe, in reaching the ALJ's conclusions of law.

[Doc. 23 at Page ID # 1388-89 (citations omitted)].

At step three, the ALJ found:

Despite the claimant's severe impairments, I find the claimant has not satisfied the narrow definition of a listed impairment as set forth in Appendix 1, Part 404, Subpart P of Regulation No. 4, nor do the impairments equal in severity a listed impairment. I have specifically considered Social Security Listings 1.03, 1.04, and 4.05. Therefore, a finding of conclusive disability cannot be reached at this step of the sequential evaluation and we must proceed to [the] next step of the evaluation.

(Tr. 16).

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The listings describe impairments the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled, and entitled to benefits. However, the claimant has the burden of proof. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The claimant must point to specific medical findings which show that all of the criteria of the Listing are satisfied.

13

*Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at \*5 (E.D. Tenn. Jan. 23, 2014) (citations omitted); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("And even if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment . . . ." (citation omitted)).  Only when an impairment satisfies all criteria within a Listing will the impairment be found to be of listing-level severity.  20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing-level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).  However, the Sixth Circuit has rejected "a heighted articulation standard" with regard to the ALJ's step three finding.  *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).  The Sixth Circuit has further endorsed the practice of examining the entire decision to determine whether the ALJ committed harmful error at step three. *See Forrest*, 591 F. App'x at 366 ("Regardless of *Malone*'s deferential 'substantial evidence' standard, here the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three." (citing *Bledsoe*, 165 F. App'x at 411) (other citation omitted)).  Finally, while an ALJ errs by failing to "make sufficiently clear the reasons for her decision" at step three, *see Martin v. Comm'r of Soc. Sec.*, No. 3:18CV00005, 2018 WL 6169282, at \*9 (N.D. Ohio Nov. 26, 2018) (citation omitted), the error is harmless where the claimant fails to otherwise show the elements of the relevant listing.  *See Forrest*, 591 F. App'x at 366.

In this case, Plaintiff does not identify any particular Listing that he believes the ALJ should have considered.  Assuming Plaintiff is attempting to challenge the ALJ's determination that

14

Plaintiff did not meet the requirements of Listings 1.03, 1.04, and 4.05, the Court makes the following findings.

Listing 1.03 requires: "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B(2)(b), and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." Section 1.00B(2)(b) of the Listing of Impairments defines "inability to ambulate effectively," as "an extreme limitation of the ability to walk," requiring the use of "a hand-held assistive device(s) that limits the functioning of both upper extremities." In this case, the ALJ noted that in August 2015, Plaintiff presented with a mildly stooped, antalgic gait, and that he used a cane (Tr. 18, Tr. 888). By December 2015, as the ALJ noted, Plaintiff's gait was normal (Tr. 18, Tr. 943). Plaintiff does not address this evidence which plainly shows he cannot meet the ineffective ambulation requirement of Listing 1.03.

Listing 1.04 requires:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>>
>> Or
>>
>> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning

or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

Or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The Commissioner points out that Plaintiff's failure to prove his inability to ambulate effectively means he also cannot meet Listing 1.04C. Listing 1.04B requires a specific diagnosis of spinal arachnoiditis. *See Martin*, 2018 WL 6169282, at *11 ("Under the Listing, documentation of a spinal arachnoiditis diagnosis, by either operative note or biopsy, is required." (citing *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529-30 (6th Cir. 2006)). Plaintiff does not point to any such diagnosis in the record, and the Court could not find one, either.

As for Listing 1.04A, the ALJ noted that X-rays of the thoracic spine from August 2014 revealed "no stenosis, herniation, or nerve root involvement" (Tr. 18), and that X-rays or the lumbar spine from July 2018 were "essentially normal." (Tr. 19, Tr. 1297). The ALJ described how:

Objective testing and physical exams showed only mild degenerative disc disease of the cervical and thoracic spine with mild-to-moderate degenerative disease in the lumbar spine with a small disc protrusion at L5-S1 (Exhibit B20F/1-5). Lumbar testing showed that there was no evidence of any significant progression from 2007 (Exhibit B6F).

(Tr. 20). The ALJ further noted that, in March 2015, a physical exam revealed "tenderness to palpation throughout the spine but little, if any reduced range of motion" (Tr. 18), which Plaintiff

16

does not challenge. The ALJ also partially credited the state agency physicians, who concluded Plaintiff did not meet Listing 1.04 (Tr. 177; Tr. 160).

After careful consideration, the Court finds substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal the requirements of Listing 1.04, including Listing 1.04A.

Listing 4.05 relates to Plaintiff's AFib, and requires proof of:

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

The ALJ found:

> The record shows a history of treatment for atrial fibrillation. Records from April 2011 showed that the claimant presented with allegations of racing heart and palpitations. The claimant presented to the emergency room and was diagnosed with atrial fibrillation and rapid ventricular response (Exhibit B8F/2). The claimant continued to follow conservative treatment for this impairment (Exhibit B9F) and there have been no major heart symptoms or episodes during the relevant period.

(Tr. 17).

Plaintiff does not challenge this characterization of the record, which, as the Commissioner points out, establishes that Plaintiff did not experience recurrent cardiac syncope despite prescribed treatment [Doc. 25 at Page ID # 1412]. As such, the Court finds substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal the requirements of Listing 4.05.

Finally, while Plaintiff mentions other issues in connection with his step three arguments—including medication side effects and an alleged inability to drive due to diabetes—he fails to explain how these allegations relate to the listings identified by the ALJ, or to any other listing.

In sum, while the Court concludes that the ALJ certainly could have more clearly explained the basis for his decision that Plaintiff's impairments did not meet or medically equal Listings 1.03, 1.04, and 4.05, any error in this regard is harmless because (1) the determination is sufficiently clear and reviewable, and (2) substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal the requirements of these listings. Moreover, Plaintiff has not identified contrary evidence in the record. Accordingly, Plaintiff's motion will be denied in this regard.

### D.     RFC

Plaintiff also challenges the ALJ's assessment of his RFC. Plaintiff contends the ALJ "failed to account for Plaintiff's inability to sit for lengthy periods (due to his chronic back pain at three levels), Plaintiff's anxiety and diabetes (which cause him to frequently be unable to drive), and the side effects of Plaintiff's medications." [Doc. 23 at Page ID # 1389]. At various points, Plaintiff also argues the ALJ generally failed to account for the impact of his non-severe conditions of sleep apnea, seizure episodes, and anxiety.

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect

his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation omitted). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Further, Plaintiff has the burden of showing the severity of his conditions and their limiting effect on his ability to perform work functions. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

In assessing Plaintiff's RFC, the ALJ began by noting he considered all of Plaintiff's symptoms, and all of the opinion evidence in the record. He then described the standards for evaluating Plaintiff's symptoms, and found the following:

> The claimant alleged in his application for benefits that he was disabled due to injuries from a motor vehicle accident, heart problems, and diabetes. He testified that [h]e experienced a stroke in 2016 and has memory problems. He continues to have problems related to a fall and the car accident. He continues to experience back pain that precludes prolonged sitting, standing, and walking. He uses a cane that has been prescribed and continues to use pain medication. In agency questionnaires, the claimant alleged that he was not able to stand for prolonged periods.

> He alleged that increased blood sugar levels caused difficulty concentrating or driving. He alleged experiencing continued seizures. The claimant indicated that he provided care for the family pets. He was able to complete self-care activities with little difficulty. He alleged that he needed reminders to take medication but could prepare simple meals and do light household chores. The claimant stated that he continued to drive occasionally and could shop in stores but alleged that he could not manage his personal finances. The claimant stated that his hobbies included fishing occasionally and that he attended church. He interacted with

19

his parents daily and had no difficulties with medical personnel or other church attendees. The claimant alleged that he did not follow instructions well or handle changes in routine but that he did get along with authority figures (Exhibit B6E). The claimant stated that he experienced seizures in the past and was on medication twice a day (Exhibit B5E). The claimant's allegations are inconsistent with the record in its entirety, as discussed below.

(Tr. 16-17).

Regarding Plaintiff's diabetes, the ALJ later wrote:

The claimant was diagnosed with diabetes. Blood tests from March 2012 showed that his glucose level was 159 (Exhibit B18F/13). Records from Memorial Health Care in February 2012 showed that the claimant continued conservative treatment for diabetes but his glucose remained elevated and he continued to have difficulty managing his weight (Exhibit B22F/22). The claimant's A1C in June 2015 had increased to 13.8, despite medication, which was increased (Exhibit B23F/3).

(Tr. 18).

It is clear from this discussion that the ALJ did not credit Plaintiff's subjective complaints about difficulty concentrating and driving, based on Plaintiff's admissions that he continued to drive and because his diabetes treatment was conservative despite some elevated findings.[3] The ALJ further noted that in February and March 2015, Plaintiff's providers noted that he had no memory or concentration problems (Tr. 18; Tr. 901). These are all proper considerations when an ALJ is determining whether to credit a claimant's subjective complaints about their symptoms. *See* 20 C.F.R. § 404.1529(c) (factors to be considered include, "objective medical evidence," the treatment a claimant has received, activities of daily living, "other measures" a claimant uses to

---

[3] Plaintiff testified that he began taking oral diabetes medication in 2011 or 2012, and then a "one shot type of insulin," beginning in 2013 or 2014 (Tr. 101). The testimony appears to reflect that sometime after 2016 (outside of the relevant period for consideration of his claim), Plaintiff was put on a more regular insulin regime (Tr. 101).

20

relieve pain, and "other factors"); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (finding the ALJ properly considered the plaintiff's ability to spend time with family and others, drive or walk to the local coffee shop, and assist with chores around the house when determining the credibility of the plaintiff's subjective complaints); *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (a "conservative treatment approach suggests the absence of a disabling condition"); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." (citation omitted)). Moreover, the ALJ provided "specific reasons for the weight given" to Plaintiff's subjective complaints, and the reasons are supported by substantial evidence. *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

Plaintiff does not allege any further impairments resulting from his diabetes, nor does he cite to any evidence in the record showing any impairments resulting from diabetes. "Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson*, 786 F. App'x 586 at 589 (further stating that "[n]one of Dyson's records shed light on his level of impairment during that relevant time. And the evidentiary burden is Dyson's to carry."). Accordingly, the Court finds Plaintiff has failed to show any error with the ALJ's assessment of Plaintiff's RFC as it pertains to diabetes.

Turning to the ALJ's treatment of Plaintiff's anxiety, the Court notes that at step two, the ALJ found that Plaintiff had a mild limitation in his ability to interact with others; a mild limitation in his ability to concentrate, persist, or maintain pace; and a mild limitation in his ability to adapt or manage himself (Tr. 15). Plaintiff does not challenge these findings; his position is that the ALJ

failed to consider his anxiety in assessing the RFC.

In assessing a claimant's RFC, social security regulations require the ALJ to consider the limiting effects of *all* of the claimant's impairments—severe and non-severe. 20 C.F.R. § 404.1545(e), *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009). However, the RFC analysis is "distinct and separate" from earlier steps, and an ALJ is not required to include mental limitations in Plaintiff's RFC solely because the ALJ found these mild restrictions at step two. *See Fannin v. Berryhill*, No. 3:17-cv-236-DCP, 2019 WL 1434653, at *10 (E.D. Tenn. Mar. 29, 2019) (quoting *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *4 (E.D. Tenn. July 10, 2017)). Instead, in determining a claimant's RFC, the ALJ need only include the functional limitations they find "credible" and supported by the record. *Case v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's findings must, of course, be supported by substantial evidence in the record. Moreover, "the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011).

Here, while the ALJ did not expressly mention "anxiety" in the RFC assessment, the ALJ's decision makes clear that he relied on Plaintiff's own allegations, which the ALJ partially credited, and the normal psychiatric findings to conclude that Plaintiff did not require any further mental limitations beyond those inherent in unskilled work.[4] Plaintiff fails to cite any evidence in the

---

[4] Although the RFC does not specifically require "unskilled work," at the hearing, the ALJ asked the VE if there were "entry level jobs, SVP one or two," that a person with Plaintiff's RFC could perform (Tr. 106). The VE identified the same jobs the ALJ ultimately relied on at step five. SVP, or specific vocational preparation, at level one or two corresponds to unskilled work. SSR 004-P, 2000 WL 1898704, at *3 (Dec. 4, 2000).

22

record that does not support the ALJ's determination in this regard. Plaintiff does not cite to any medical opinions regarding any mental limitations, or any treatment notes that would support a limitation related to anxiety. Plaintiff did not mention his anxiety during the administrative hearing. Plaintiff further does not allege any particular functional limitations in his brief. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process). Moreover, as the Commissioner points out, the ALJ acknowledged his duty to consider non-severe impairments in assessing RFC (Tr. 13). The ALJ also explicitly stated, at the end of his step two analysis, that "the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 15). This language appears after a thorough discussion of Plaintiff's "mild" mental limitations. *See Hines v. Berryhill*, No. 6:17-CV-160-HAI, 2018 WL 2164873, at *7 (E.D. Ky. May 10, 2018) (similar statement not mere boilerplate where it follows thorough discussion).

In light of the above, the Court finds that the ALJ's failure to explicitly explain why Plaintiff's mild mental limitations related to his anxiety did not translate into a non-exertional limitation in Plaintiff's RFC is not reversible error warranting remand. Plaintiff's challenge to the ALJ's consideration of Plaintiff's sleep apnea and seizure episodes suffer the same fate. Plaintiff simply cites to nothing in the record to suggest that the ALJ should have included further restrictions in the RFC as a result of these non-severe impairments. The records concerning sleep apnea are from 2007, five years prior the alleged onset of disability date. The ALJ addressed them at step two, specifically noting that Plaintiff "responded well to conservative treatment for this

23

impairment and the record showed no complications or worsening during the relevant period." (Tr. 14).  Additionally, the ALJ noted Plaintiff was seizure free from at least January 2012 to June 2014, even without  medication, and at other times, this condition was controlled with medication (Tr. 14).  *See Cook v. Comm'r of Soc. Sec.*, No. 1:19-cv-1068, 2020 WL 7253307, at *4 (S.D. Ohio Dec. 10, 2020) ("Here, the ALJ was not required to include any 'reaching' limitations because Plaintiff presented no evidence that would support functional limitations."), *report and recommendation adopted*, 2021 WL 22522 (S.D. Ohio Jan. 4, 2021); *see also Smith v. Comm'r of Soc. Sec.*, 654 F. App'x 758, 763 (6th Cir. 2014) (improvement with medication supports denial of disability benefits).

Plaintiff further argues the ALJ failed to account for any side effects of Plaintiff's medications.  In support, he cites to a page in the record which sets forth a list of Plaintiff's medications (Tr. 352).  The list is undated, but appears to have been drafted in 2018, well after expiration of Plaintiff's insured status.  No side effects are identified to any of the listed medications on the cited page, and Plaintiff does not cite any other records indicating medication side effects.  The Court located a record from February 2015 indicating that Flexeril, Baclofen, Skelaxin, and Zanaflex, all muscle relaxers, "did not help and made him feel funny." (Tr. 898). Another muscle relaxer was substituted by the next appointment in March 2015 (Tr. 895).  There is no mention of issues with any other medications in March 2015.  At the next appointment in April 2015, Plaintiff's providers noted that he "tapered off the Valium without difficulty" and without experiencing muscle spasms, and that "his pain is under good control currently" with medication (Tr. 892).  Moreover, Plaintiff did not mention any medication side effects during the administrative hearing.  *Cf. White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90S (6th Cir.

2009) (ALJ erred in assessing RFC, where ALJ failed to credit claimant's testimony that "he experienced fatigue and forgetfulness with his medication," and where record reflected that claimant "was concerned about the side effects and at times asked to have his dosage decreased.").

Next, Plaintiff contends the ALJ erred by failing to account for "the severity of Plaintiff's chronic back pain, the severity of Plaintiff's hip pain after his hip replacement, the impact the hip surgery had on Plaintiff's back pain," and "Plaintiff's inability to sit for lengthy periods (due to his chronic back pain at three levels)." [Doc. 23 at Page ID # 1389]. This claim is without merit. The ALJ spends the majority of the RFC assessment focusing on Plaintiff's issues with his back and hip. He assessed a sedentary exertional level, and incorporated a sit/stand option every 30 minutes to one hour to account for Plaintiff's pain "that precludes prolonged sitting, standing, and walking." (Tr. 16). Plaintiff briefly suggests error with the ALJ's consideration of the opinion evidence in connection with his hip and back issues:

> In arriving at the court's conclusion, the administrative court afforded weight to the opinions of the medical experts of the Government, whose review was limited only to the medical records of the Plaintiff. (R. 15, 16). Accordingly, the administrative court gave little weight to the evidence presented by the Plaintiff himself and Plaintiff's treating physicians, who have in fact treated the Claimant for a significant period of time and who have clinically examined the claimant in order to arrive at their medical conclusions. (R. 15, 16).

[Doc. 23 at Page ID # 1389-90]. The Commissioner did not provide a substantive response to this argument, which the Court agrees is "poorly developed." [Doc. 25 at Page ID # 1410]. It suffices to note that ALJs are not precluded from relying on the state agency opinions over those of a treating physician. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (*citing Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). SSR 96-6p provides that the state agency

physicians "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." 1996 WL 374180, at *2 (July 2, 1996). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3. "One such circumstance [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3). Here, the treating physician's opinion Plaintiff cites was offered in 2011, while the state agency physicians' opinions were offered in 2016 and 2017, after the close of the relevant time period. Moreover, the ALJ did not fully credit the state agency physicians' opinions—he found Plaintiff was far more limited. As Plaintiff does not provide a more developed objection to the ALJ's discussion of the opinion evidence, the Court will not address this issue further. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Moore argues that 'the ALJ failed to properly weigh the medical opinions of [her] treating physicians and psychiatrists' by 'refusing to give [those opinions] . . . controlling weight,' but does not elaborate or provide any further development of the argument. Therefore, we deem this issue waived." (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010))).

Last, Plaintiff briefly argues the ALJ failed to consider that Plaintiff's "condition is degenerative in nature." [Doc. 23 at Page ID # 1391]. In support of this argument, Plaintiff relies on an alleged "later assessment" from 2013 by a Dr. Elizabeth Hartmann [*Id.*]. The page Plaintiff cites does not reflect an assessment or records from Dr. Hartmann, and the Court was not able to locate the assessment in the record. Moreover, as the Commissioner argues, the ALJ did consider

26

the degenerative nature of Plaintiff's conditions, and reduced Plaintiff's RFC from the 2012 adjudication. The potential for Plaintiff's condition to continue to deteriorate after the expiration of his insured status does not support disability. *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value." (quoting *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004))).

In sum, while the ALJ did not mention or go into detail about all of Plaintiff non-severe impairments in assessing Plaintiff's RFC, Plaintiff has simply failed to show that the RFC is not supported by substantial evidence. Accordingly, Plaintiff's motion will be denied in this regard.

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

> (1) Plaintiff's motion for judgment on the pleadings [Doc 22] is **DENIED**;
>
> (2) the Commissioner's motion for summary judgment [Doc. 24] is **GRANTED**; and
>
> (3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

27